Case number 23-2629, Eastern Arkansas, Katherine Bradford v. Kilolo Kijakazi Professor Wallace, good to see you again. Good to see you too. This case is procedurally perhaps unique. I've got a preliminary question. One of your points is that the agency failed to obey the remand directions of the district court. The law of the case is typically handled by a court, its own law of the case. And so my question, I have never seen a case where a circuit court was asked to find that an agency failed to obey a district court law of the case when the district court did not so rule. Have you any cases or have any of your academic colleagues by any chance taken off on this kind of a twister? It is a twister. And by the way, I'm Greg Wallace. I represent Katherine Bradford in this Social Security Disability Appeal and may it please the court. You're right. It is an oddly postured case. The Supreme Court in a 1989 case, I think it was Samuelson, held that an LJ's refusal to follow a remand order is reviewable for legal error by the courts. That I understand. But one question arises in this, who are we reviewing on this issue? Are we reviewing the ALJ or are we reviewing the district court? And if so, what's our standard of review, particularly if we're reviewing the district court? Well, I think since the ALJ made a legal error in not following the district court's earlier opinion. But the district court disagreed with that. Yes, in its second opinion it did. Well, now it's under review. But I would suggest that it's still the ALJ's order that is under review. But how do we factor in that the district court doesn't agree with your law of the case argument? This isn't the whole case. No, exactly. I don't want to occupy that. And I think that's a great question. And it's one that I don't have a ready answer to. Because I would say that the way that you deal with that is simply by ignoring what the district court said the second time around. But I think that this still is. We can't do that. It might be de novo review on both. Right, and that's why I say I think it's more of a legal error. And that's why it would be de novo review. What's the legal error that you think? Wasn't the ALJ allowed to consider all of the medical evidence on the remand? Yes, but I think the district court was very clear that it found that the giving of nurse practitioner Ash's medical opinion only little weight was error. In fact, the district court says in the last paragraph of its opinion, the court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not give proper weight to the opinions of the medical providers. And or assign an RFC reflective of those opinions. So I think there was some sense. I think there was some obligation on part of the ALJ to follow that part of the district court's opinion, not just to simply review all of the evidence de novo in that regard. Well, there was the new information from the consulting. You don't disagree that at least that could be considered. Oh, certainly. It could be considered. And I mean, this is not the only part, as Judge Loken pointed out. This is not the only part of this case. Not only do we have an ALJ who disregarded, even disputed the district court remand order, but you also have an ALJ who gave, again, little weight to the opinion of Bradford's longtime treating provider who actually gave an opinion during the period relevant to her claim for benefits. And instead gave great weight to the opinion of a one-time examiner who gave an opinion more than a year and a half after Bradford's date last insured for her Title II benefits, whose opinion did not state it was retrospective, and who was not provided with any of Bradford's medical records. What do we do with that, not having any of the medical records? I know I don't have the language in front of me, but they have to have sufficient information. All necessary information is the language of the rank. And so is your argument that that is the necessary information? And if so, sort of what happened as a result of her not getting, or the, I think it's her, the consultative examiner not getting? I think in this case you have a real anomaly, I think. You have Ms. Bradford being sent out to this family doctor who's more than four hours away from her home in Jonesboro, sent over into Middle Tennessee to go to this. How is that relevant? Well, I was just going to say you can make of that what you want to. I don't know. Well, you brought it up. I thought it was relevant somehow. Well, I think it is relevant because I think an inference can be drawn here that maybe the commissioner is picking and choosing a consultative examiner who's known for giving favorable opinions to the commissioner. Now, I don't know that that's true, but I was just going to say you can make of that whatever you want to. Certainly there were consultative examiners available in the Jonesboro area because ALJ has sent them out to those in a number of other different cases. But in this particular case, what you have is a consultative examiner who sees her one time, who has no treating relationship. She's a family doctor, no orthopedic expertise. None of the medical records are provided, which would have been – I mean, this court has recognized in other cases that retrospective medical opinions can be helpful to an ALJ for an earlier period for which benefits may be awarded. And that's what we're talking about here, right? Yes. We're talking only about a retrospective slice of time. Yes, exactly, because her date last insured was in, I think, September of 2018. And so when Dr. Cowan performed her examination, this was in March of 2020, and nowhere does she even say that I'm describing her condition back during the period relevant to her award eligibility for benefits. So I think that's one of the problems. I don't have – I don't think we would object as strongly to Dr. Cowan's opinion if she had stated it was retrospective and she had been given the treatment records that Ms. Bradford had, which were already in the possession of the commissioner due to the prior litigation, adjudication of her claim. And am I right that the ALJ actually thought that that, in part, part of the reason for giving that greater weight was its recency or its contemporaneity? Yes, which is odd. I'm trying to figure out if we're really – we're in that situation where we really are going back in time, a little difficult for everyone, and it's just a slice. I'm curious about the relevant nature of the sort of current condition of your client. Yeah, at the end of the paragraph in which the ALJ discounts Nurse Practitioner Ashe's opinion, he says, well, I'm going to give the most recent person to give the client a detailed physical exam, a time that she appeared to be capable of light work. And I would contend that in this case, the most recent examination is not the most relevant one because this was a long time after almost a year and a half or more than a year and a half after her date last insured. And there's nothing in the opinion by Dr. Cowan in which she states it was retrospective. Sorry, go ahead. You could say, well, if she's okay now, it seems like a few years back, the inferences. Well, it could be. That's true. I was going to ask that. Is there some reason to believe she's improved? Well, you know, we don't know. I mean, that's that's the I think it. I think the question is, is, yes, if she was in bed, I think Dr. Cowan's opinion shows that she is in bad shape. She has significant limitations in her ROM, but Dr. Cowan thought that she could have she only had certain limitations. But what's significant to me is that the ALJ said that the statements of Nurse Ash were only relevant through the date that she gave them in 2016. Okay, that's fine. But that's at least during the period for which she's eligible for these Title II benefits. Sometimes claimants improve or level off or whatever. I just don't think that in this case, a single limited exam that reaches conclusions that are inconsistent with a lot of the clinical findings that preceded that are reliable in that regard. So I would argue that that whatever the extent that Dr. Cowan's report is, is relevant. And I don't think it is. It does not. It does not adequately reflect Miss Bradford's condition in that regard. So I think that, and one other thing that I want to mention here, that's really not, we brought it up in our brief, but it's really not mentioned in the Commissioner's brief. And that is that even if Dr. Cowan's opinion is entitled to some relevance, some do, she found that Bradford can be on her feet, can stand and walk four to six hours in an eight hour work day. Now the ALJ gave that great weight, but the ALJ found in his RFC assessment and in his hypothetical to the VE that Bradford could stand and walk six hours in a normal work day. That doesn't square. A limitation to standing and walking four to six hours is not the same as a limitation to standing and walking six hours. And I think that... So what do you do with that disconnect? I think that arguably Dr. Cowan's report suggests that Bradford can only... Excuse me, the RFC was six to eight? Six hours, six hours, which is typically the requirement for engaging in light work, being able to be on your feet six hours out of an eight hour work day. But Dr. Cowan said she can only be on her feet four to six hours. And so I would say that Dr. Cowan's opinion supports an RFC of something less than light work. And if she's at sedentary work, she grids out as disabled under the sedentary guidelines based on her changing her onset date to 2015. So I think that there are several problems with Dr. Cowan's opinion. We've laid those out in our brief and I'll be happy to address further questions, but I would like to, with the court's indulgence, save the rest of my time for rebuttal. Thank you. Mr. Tankard. May it please the court, Frank Tankard for the Commissioner of Social Security. There are two questions at issue in this case. The first is whether the commissioner complied with the district court's 2020 remand instructions. And the second is whether the ALJ properly followed SSA regulations in giving great weight to the opinion of the consultative examiner. Dr. Keehan. The answer to both questions is yes. What about the last point that Dr. Cowan has credited? Her opinion was not light work. So the last point... Plaintiff is disabled under the sedentary work guidelines. So the last point, plaintiff issues, points out the four to six hours of standing and walking that Dr. Keehan found. Four to six hours, 4-2-6, includes necessarily six as the upper range of that. So this is the type of issue that boils down to that deference to the ALJ as the finder of fact. And the question is, was the ALJ within her zone of choice in finding that this opinion as a whole, including the four to six standing and walking limitations, supported a finding that plaintiff could in fact perform light work at the upper end. I would also note that the ALJ didn't give controlling weight to Dr. Keehan's opinion, rather great weight. The ALJ also gave great weight to a state agency medical consultant's finding from March 2020 that also found appellant capable of light work, which would include that ability to walk and stand for six hours. For six hours, not the four to six. Yeah, the state agency medical consultant found capable of light work, which is defined under the regulation of 404.1567B as six. And that's what the state agency medical consultant found, which the ALJ also considered didn't give controlling weight to any one opinion here, but rather acted properly in giving great weight to those two. And based on the opinion evidence and the entire record, finding that it supported an ability to perform light work, which includes standing and walking six hours. And the ALJ was within her zone of choice in reaching that factual conclusion. Sticking then with the second issue of the consultative examination, the ALJ probably gave that opinion great weight. And in so doing, I'd like to address the issue of the timing that was discussed. This opinion was in March 2020. I would like to point out there were two applications. There was a Title II application in which the date last insured was 2018, so that is the relevant date. There was also the SSI application on which the appellant was found disabled as of April 2020. So it is true that as far as in relation to the 2018 date last insured, it's retrospective. But it is during the relevant period in regard to SSI. I would also note that that finding, that was made at the initial level based on a subsequent application that was not part, not before the court at the time of the prior district court remand. But also the last insured date for Title II was in September 2018, right? That's correct. That's why we're not looking beyond that on the disability benefits. Sure. Certainly, and that's relevant. I'm just pointing out that it is during the relevant period for SSI, which is also a claim that the ALJ decided. Well, so that issue prior to, that issue is the SSI prior to 2020 as well as the disability? Yes. I thought this was just a Title II appeal, but I didn't study it carefully enough. No, Your Honor. It's a Title II and SSI appeal. So what's your position on whether it was proper to use the opinion given in 2020 to evaluate the Title II question as of September 2018? So the ALJ stated, and this isn't post hoc rationalization, this was part of the ALJ's analysis of the CE, was that the nature of appellant's impairments, or specific impairments in here, which include, you know, there are multiple, but degenerative disc disease, obesity, a knee issue, that these are the type of impairments. And the ALJ grounded this on a lengthy discussion of the record, not just speculation, but these are the type of impairments that don't tend to get better over time. They tend to, you know, stay the same or get worse. And indeed, at the hearing, the appellant was asked like a few times, can you do this? I know you can't do this now, but we're talking back then. The evidence suggests that, in fact, appellant's conditions are worsening with time, if anything. And the ALJ, again, reasonably, and well within her discretion as the finder of fact, acknowledged that it was at the end of the relevant period for the SSI claim and after the date last insured in regard to the Title II claim, but found that for the nature of these conditions, it was reasonable to give this opinion great weight and to apply it retroactively to the earlier period. And given that, why not give the medical records? How should we weigh that? That seems significant, particularly in this situation where we do have what you've called the timing issue. Why isn't that something that is kind of glaringly missing in terms of how we look at Dr. Cowan's opinion? And, Your Honor, in terms of the medical records? My understanding is she did not have any of the claimant's medical records. Now I understand. Thank you. The standard is under 404.1517. The regulations require the ALJ to give any necessary background to a consultative examiner. So there is no requirement under the regulations that the consultative examiner be given particular medical records of the claimant. Your Honor, if I understand correctly, the assertion she had none. Is that correct? This was just one examination without any background, at least background medical records. The consultative examination report doesn't list that the consultative examiner did review any medical records. So, yeah, there is no evidence that she had medical records. The consultative examiner met with the claimant, discussed and put in the report the claimant's medical history, including going back and during the relevant period and before the relevant period. Self-reported? As presented in the report, it could be self-reported. There is some ambiguity in the record as to whether the consultative examiner did review records, but I acknowledge that there is no indication that she did. So it may well have been self-reported. And then in addition to that interview, the full examination, and then the CE also obtained x-rays as part of the consultative examination that were cited as part of it. So the ALJ did not in any way fail to comply with the regulations in doing that. The CE proceeding in that manner and the ALJ relying on this is completely acceptable under the regulations. Now, is it a relevant factor to be considered whether the CE also reviewed a whole bunch of medical records or didn't? Sure. It's relevant. It's right there in the regulations. 404, 1527, various factors, including the background, treating relationship, familiarity with the plaintiff's history. All of that is always relevant. But here the question is, was the ALJ outside of her zone of choice? Was it unsupported by substantial evidence to find that entitled to great weight while finding, as the ALJ did, that it was supported by examination findings and then also relying on other evidence, including the state agency medical consultant who did have the benefit of reviewing all those medical records and also found an RFC for light work, among other evidence that the ALJ considered. One thing I would also note, as far as that SSI, since I brought that up, the SSI finding that she did become disabled in April 2020. So the relevant period here for the SSI claim was from her alleged onset date in April 2015 through April 2020. And then for the Title II, it was from 2015 to September 2018 when her date last insured expired. I would just note that 2020, she was found disabled based on a change in age category, not because of a finding that her condition worsened, but rather that she gritted out by turning to age 55 at that time. And how does that benefit her? I would just, I would just note that. No, no, I mean, I didn't mean in this case. I meant what would she be entitled to based on that finding under SSI? So that finding then is that as of April 2020, she's entitled to SSI benefits. And how do those benefits compare to the Title II benefits that she's seeking? So she would get, if she also got the Title II, she would get, you know, be entitled potentially to back benefits to the date that she was found disabled, plus additional, you know, additional benefits. As far as the calculations of how that would factor, it's sort of a complicated question. But it is still relevant. You know, the fact that she was found disabled of April 2020 doesn't in any way moot this case or anything. I was just pointing that out just because it's a little unclear from the record, just so the court is clear that she was not found disabled on April 2020 because of a change in her condition. I wanted to point that out specifically because the CE exam was in March 2020. So in case there was any sort of ambiguity in there, I wanted to clear that up. On what I've referred to as the law of the case issue, do you have any prior situations or cases to cite where a circuit court has been asked to review an ALJ's, how does the circuit court review that? I do not have a case supporting appellant's argument. I do have a case directly on point contrary to a plaintiff's argument. And it's the case that appellant herself relies on, Brachtel v. Apfel, 132 F3D 417, from this circuit in 1997. It's actually the primary case a plaintiff, I'm sorry, appellant cites. And there, there was this law of the case argument. That's this claimant? Yes. A prior case? Yes. I'm sorry, it's not this claimant. It's cited in appellant's brief, is what I'm saying. You said the name of the case. It sounded a little bit like Bradford, but it's different. Can you say the name again? Brachtel, sorry. Brachtel. Brachtel, yeah. And that case is right on point, actually. The district court had some language in a remand order that the appellant argued required a certain finding. The district court itself, back on remand, said no, that language was part of the discussion, may have sort of sounded in that context like it required a certain finding. There had to do with this RFC limitation for taking naps. But the court said it actually wasn't. What we look to is the remand instructions. And, in fact, the remand instructions really, for further development and such, wouldn't really make sense if the court had ordered that specific finding. And the court said... Now, wait. When we were viewing, whose remand instructions? The district court or the circuit court? So this was the exact same circumstance here. It was district court both times. The district court remanded. It came back to the district court. The claimant argued to the district court that the ALJ hadn't followed its remand instructions. The district court said and rejected that. And, in so doing, the district court said that the district court, quote, knew its original intent in remanding the case, and we will defer to the district court's construction of its own order, unquote. And it's the commissioner's position that the same level of deference should apply in this case. Although here we had two different judges, I gather, and Brachtel was the same judge. That may be your honor, although... I'm not saying it changes the legal analysis necessarily, but it sounded like from your quote that our court was saying the judge knew what the judge meant. Oh, are you talking about the district court judge? Yeah. Here it was two different. In our case, it was two different judges. I know. Okay. In Brachtel... It was the same judge, it sounds like, in Brachtel. It said the court said, quote, the district court knew its original intent, so I can't answer that question. It may have been. And I'm out of time, so unless there are any further questions, I thank the court for its time. Thank you. Further rebuttals? May it please the court, as to the question of whether the ALJ's decision to give Dr. Cowen's opinion great weight is supported by substantial evidence on the record as a whole. That's the second real issue in the case. We would submit that without giving Dr. Cowen additional medical or any medical records, expecting her to give an opinion about Bradford's condition, medical condition, prior to September 2018 is simply unreasonable. I think that's what makes this information necessary. You use the word additional. Do you mean medical records that the state consultant did not have? No, that Dr. Cowen did not have. She did not have any of her voluminous medical records. She should have had that.  The second point that was made by counsel for the commissioner is that the ALJ did not give controlling weight to Dr. Cowen's opinion, but relied on the opinions of the state agency doctors in the initial reconsideration state on her second application. That's simply not true. If you look at the ALJ's opinion, the only reliance that he made on the state agency non-examining doctors was from the first application, the initial application. So no supporting, there's just not any evidence in the record, much less substantial evidence that supports the ALJ's finding that she can perform light work during that relevant period. Thank you, Your Honor. Thank you, counsel. Case has a complicated history and been well briefed and arguments been helpful. We'll take it under advisement.